J-A14036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| R.M.P., | : | |
| | : | |
| Appellant | : | No. 275 WDA 2019 |

Appeal from the Order Entered January 22, 2019
in the Court of Common Pleas of Blair County
Orphans' Court at No(s):  2010 GN 4608

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 30, 2019**

R.M.P. ("Father") appeals from the Order granting the Petition filed by N.M. ("Mother") to allow her to relocate from Hollidaysburg, Blair County, Pennsylvania, to Alpharetta, Georgia, with the parties' son, A.J.P. ("Child"), born in September 2008.  We affirm.

The record in this matter reflects that Mother and Father were never married.  On December 8, 2010, Mother filed a Complaint for custody of Child. After conducting an intake conference, the trial court entered a Custody Order on February 18, 2011, directing that the parties would share legal custody of Child; that Child would reside with Mother, who would have primary physical custody; and that Father would have partial physical custody in accordance with a schedule.

Following a procedural history not relevant to this appeal, including several modifications, Father filed a Petition for Special Relief on October 26,

2018, based on Mother's stated intention to relocate to Georgia with Child.[1]

Father requested that Child not be permitted to relocate with Mother to

Georgia, or that Child reside with Father, if Mother was permitted to relocate.

The trial court held a hearing on the Petition on November 5, 2018.[2]  On

November 8, 2018, the trial court entered an Order providing that the parties

would continue to maintain the status quo, with Child remaining in his school

pending further agreement of the parties or pending further order of court.

The trial court explained the procedure surrounding the Petition for

Relocation as follows:

> Mother filed a Petition to Relocate to Alpharetta, Georgia[,] on October 31, 2018.  Father was served with the Proposed Relocation on November 14, 2018.  Father did not file any Objections earlier than thirty days[,] as mandated by [23 Pa.C.S.A. § 5337(d)(1), (2)].
>
> [On December 17, 2018,] Mother filed a Petition to Confirm Relocation[,] and a hearing was scheduled for January 7, 2019 ….
>
> Prior to the January 7, 2019 hearing, Father filed a Counter-Affidavit opposing [r]elocation [on December 20, 2018, with a Petition for Modification of Custody].  Father's Counter-Affidavit was dated December 9, 2018, but was not filed with the [trial court] until December 20, 2018.  Mother objected to an [e]videntiary [h]earing being held, as Father's Counter-Affidavit was not filed within the aforementioned thirty (30) day period[, in violation of section 5337(d)(4)].

---

[1] Mother had not yet filed her Petition for Relocation at this time, but had apparently stated her intention to do so.

[2] In his Petition for Special Relief, Father also challenged Mother's temporary relocation to Woodbury, Bedford County.  Relevantly, Mother continued to take Child to his school in Blair County.

The [trial court] notes the [] [p]arties have been involved in countless [c]ourt proceedings, including two [e]videntiary hearings and many [s]pecial [r]elief hearings. However, [the trial court] concluded that an [e]videntiary [h]earing should nonetheless be held, and the same was conducted on January 7, 2019. [] Child's interview was then conducted on January 9, 2019.

Trial Court Opinion, 3/5/19, at 2-3.[3]

Based on the evidence presented at the hearing on Mother's Petition for

Relocation, the trial court found as follows:

The [p]arties have had a tumultuous relationship laden with conflict. They were never married; however, they did reside together in March [] 2009. At that time, when [Child] was approximately six (6) months old, Mother accused Father of domestic violence, left the residence, and moved in with her parents. (T.T. 1/7/19, p.p. 6-7).

The [p]arties reunited thereafter, but separated again in November [] 2010[,] upon additional claims by Mother of domestic abuse perpetrated by Father. (T.T. 1/7/19, p.p. 8-9). Father's threatening conduct against Mother continued until she

---

[3] In her brief, Mother asserts that we should not address Father's issues on appeal, and we should affirm the trial court's Order due to Father's failure to follow proper procedure in addressing Mother's Petition for Relocation under section 5337. **See** Mother's Brief at 3, 9 (citing 23 Pa.C.S.A. § 5337(d)(4) (providing that "[i]f a party who has been given proper notice does not file with the court an objection to the relocation within 30 days after receipt of the notice [of the proposed relocation] but later petitions the court for review of the custodial arrangements, the court shall not accept testimony challenging the relocation.")). As the trial court conducted the custody relocation evidentiary hearing and rendered a decision, we decline to do so. The trial court explained that its departure from the strict enforcement of the statute was in the interest of resolving the custody issues between the parties. The court was aware of Father's objections to Mother's proposed relocation, since he had filed his objections in his Petition for Special Relief before Mother had filed her Petition for Relocation; thus, the trial court deemed Father's objections timely filed. **See** N.T., 1/7/19, at 2-3 (citing Trial Court Order, 11/5/18). We will not disturb the trial court's decision.

filed for (and after a hearing, was granted) a Protection from Abuse [("PFA")] Order for a period of approximately eighteen months. (T.T. 1/7/19, p. 11).

Father moved out of the Blair County area, away from [Child], on two separate occasions for up to six months on each occasion. (T.T. 1/7/19, p. 12). Mother testified that she kept records[,] which document Father missing over 500 scheduled custody visits over the past eight years. [(T.T., 1/7/19, at 13.] Mother also testified that she was requesting a move to Alpharetta, Georgia, to reside with her brother and his family. [(T.T., 1/7/19, p. 18-20)].

Mother testified she had been employed in Blair County for six years as an aide to [a government official], and then had opened her own business. (T.T. 1/7/19, p. 21). She was unable to sustain that business, and it was closed. [(T.T., 1/7/19, at 19-20)]

Mother presented evidence that her move to Georgia was motivated to be close to her family and to provide her with an opportunity to seek an advanced degree[.] (T.T. 1/7/19, p. 21). While in Blair County, Mother attended each of [Child's] parent-teacher conferences, while Father has attended none. (T.T. 1/7/19, p. 15).

Trial Court Opinion, 3/5/19, at 3-4.

At the hearing, on cross-examination, Mother testified that she had agreed to give Father two overnight visits with Child per month, because she was concerned about Child sleeping in Father's home when Father's former girlfriend, an alcoholic, was present. N.T., 1/7/19, at 40-41. Mother testified that she also had given Father, by agreement, two additional, one-week-long vacation custodial periods with Child during 2018, so that Father could take Child to Orlando. *Id.* at 41.

In the January 22, 2019 Order, the trial court granted Mother's Petition for Relocation. The Order did not disturb the existing shared legal custody of Child. Additionally, the Order continued primary physical custody with Mother, and awarded Mother and Father, equally, shared physical custody during the summer months, commencing the first week after the end of the school year. The Order stated that, because of the distance, the parties would have a two-week on/two-week off period of custody in the summer, and that they would be equally responsible for transportation. The trial court awarded Father a one-week period of custody over the Christmas holiday break every year, beginning in 2019. During even-numbered years, Mother would have Child for Christmas Eve and Christmas Day, and Father's week of custody would begin on December 26th. During odd-numbered years, Father would have Child for Christmas Eve and Christmas Day, and for the balance of one week. Mother was required to bring Child to Blair County no less than once per year for a five-day visit with Father, with Mother responsible for transportation. Mother was also responsible for the full cost of the Christmas visit between Child and Father. Mother and Father were to keep each other informed of their current address and telephone number. They were also required to keep each other informed of Child's progress in school, school activities, and general welfare, and were to consult with one another concerning major decisions affecting Child.

On February 1, 2019, Father filed a *pro se* Motion for Reconsideration. On February 15, 2019, Father a *pro se* Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(ii).

On February 20, 2019, Father, acting *pro se*, filed an Emergency Motion for Stay pending appeal. Specifically, Father requested a stay of the January 22, 2019 Order to prevent Mother from relocating to Georgia with Child while the appeal was pending, so that the trial court could consider all of the custody relocation factors under section 5337(h). On February 25, 2019, the trial court denied the Motion, and indicated that its opinion was forthcoming. The trial court stated as follows:

> Father was represented by [c]ounsel ([] Kristen Anastasi[, Esquire ("Attorney Anastasi"),]) at the [e]videntiary [h]earing. The post-hearing filings have been filed by [Father, *pro se*]. The [trial court's] office contacted Attorney Anastasi regarding this [h]ybrid [r]epresentation, and was informed Attorney Anastasi is no longer involved in the case. Attorney Anastasi was instructed to file a [p]raecipe to [w]ithdraw or some other document so that the [r]ecord may evidence her [w]ithdrawal.

Trial Court Opinion, 3/5/19, at 1-2. The trial court subsequently entered an Order providing that the appearance of Attorney Anastasi as counsel for Father in this matter was withdrawn. On March 5, 2019, the trial court filed its Rule 1925(a) Opinion, which included a discussion of the section 5337(h) factors.

On March 8, 2019, Andrew R. Carson, Esquire ("Attorney Carson"), entered his appearance on behalf of Father. On March 12, 2019, Attorney Carson filed an Application to amend Father's *pro se* Concise Statement, which

this Court granted. On March 21, 2019, Father, through counsel, filed an Amended Concise Statement.

Father raises the following issues for our review:

I. Whether the trial court erred in failing to perform an analysis of the factors enumerated in 23 Pa.C.S.[A.] § 5328(a) in granting [] [M]other's [P]etition to relocate from Pennsylvania to Georgia[,] as the relocation necessarily modified custody and interfered with [] [F]ather's exercise of custodial rights[?]

II. Whether the trial court erred in granting [] [M]other's [Petition] for Relocation from Pennsylvania to Georgia without performing an analysis of all of the factors enumerated in 23 Pa.C.S.[A.] § 5337(h)[?]

Father's Brief at 6 (issues renumbered).

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge[,] who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable[,] as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial

court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted). Further, "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted); *see also* 23 Pa.C.S.A. §§ 5328, 5338. In assessing the child's best interest, the trial court must consider the custody factors set forth in section 5328(a) of the Act, which provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 8 -

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted); *see also* 23 Pa.C.S.A. § 5323(d) (providing that, when a trial court awards custody, it must "delineate the reasons for its decision on the record in open court or in a written opinion or order."). However, "[i]n expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (citation and quotation marks omitted).

Additionally, section 5337 of the Act sets forth the procedures and standards for relocation requests. The Act requires the trial court to consider the following in a relocation proceeding:

> **(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Moreover, the party proposing relocation has the burden to prove that relocation will serve the child's best interest. 23 Pa.C.S.A. § 5337(i). Each party, however, has the burden of establishing "the integrity of that party's

motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

While Father identifies two issues in his Statement of Questions Involved, he addresses them simultaneously in the Argument section of his brief. On review, however, we will address Father's claims separately.

First, Father argues that the trial court did not consider the custody factors set forth under section 5328(a). Father's Brief at 25. Father only specifically challenges the trial court's consideration of the factors set forth under subsections 5328(a)(14) and (15), regarding whether the prospective household members in Georgia have a history of drug or alcohol abuse, or other mental or physical health conditions. *Id.* at 23. Father asserts that the record is deficient, in that it contained only the names of the family members with whom Child would be living, and Affidavits from them stating that they have never been convicted of any of the enumerated offenses (or their

analogues) on Pennsylvania's Criminal Record/Abuse History Verification. *Id.*[4]

Father's argument concerning these subsections, which includes only two sentences, is not properly developed. *See* Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Father does not cite to any evidence that members of Mother's prospective household have problems with drugs or alcohol or any other mental or physical health issues, nor did he present evidence of such problems at the evidentiary hearing. *See Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant."). Additionally, during the hearing, Father conceded that Mother's brother, with

---

[4] Father also claims that the trial court erred by failing to address both the custody factors and relocation factors simultaneously. Father's Brief at 20, 23. *But see id.* at 22 (acknowledging that the factors identified in sections 5328(a) and 5337(h) overlap). Although the trial court did not specifically address all of the factors in its January 22, 2019 Order, we observe that Father retained new counsel **after** the trial court had filed its Rule 1925(a) Opinion, which explained its consideration of the section 5337(h) relocation factors. This Court subsequently permitted Attorney Carson to file an Amended Concise Statement, and allowed him to challenge the trial court's analysis of the section 5337(h) relocation factors, as set forth in its Rule 1925(a) Opinion. The trial court also noted, in its 1925(a) Opinion, that it had intended to "fine-tune" its January 22, 2019 Order after a subsequent hearing, but Father's appeal divested it of jurisdiction. Trial Court Opinion, 3/5/19, at 8. Thus, Father had the opportunity to address the trial court's reasoning under section 5337(h), and therefore, under the unique procedural posture of this case, we will not remand the matter to the trial court for the filing of a separate opinion restating its analysis.

whom Child would be living in Georgia, is a "good guy," and that "[i]t is not the issue of is this home appropriate [*sic*]…." N.T., 1/7/19, at 68. Moreover, had any such evidence been proffered at the hearing, the custody considerations addressed by subsections 5328(a)(14) and (15) would have been part of the consideration of the relocation factor at subsection 5337(h)(10), which directs the court to consider "[a]ny other factor affecting the best interest of the child."[5] Therefore, Father is not entitled to relief on his first claim.

Next, Father argues that the trial court's findings as to the section 5337(h) relocation factors are not supported by the record. Father's Brief at 25. Specifically, Father raises challenges to subsections 5337(h)(4), (6), and

---

[5] We additionally note that the award of custody did not change substantially in the instant case. As in the previous custody Orders, Mother and Father were directed to share legal custody, and Mother would maintain primary physical custody while Father would maintain partial physical custody. **See cf. A.V. v. S.T.**, 87 A.3d 818, 823-25 (Pa. Super. 2014) (vacating order granting mother's relocation and remanding for further proceedings, where granting relocation significantly changed father's custody from shared physical custody to partial physical custody, and thus made a new award of custody, without proper consideration of the section 5328(a) custody factors). Here, the award of custody remained the same, with only a change in schedule; Child requested to relocate to Georgia with Mother; and the trial court took into consideration the relocation factors under 5337(h), which, Father concedes, overlap with those contained in section 5828(a). Therefore, under the facts of this case, we are not "deprived of explication and guidance" by the trial court on these matters, and we conclude there is no need to remand to the trial court to provide a separate analysis of the section 5328(a) custody factors. **Cf. id.** at 823.

(7). *See id.* at 25-27.[6] Regarding subsection 5337(h)(4), Father claims that Child's interview focused almost entirely on his preference, and encompasses only seven pages of transcript. *Id.* at 25. Father also claims that Child's statements that it would be "cool" to live in Georgia because he has "family down there" do not support the trial court's conclusion that Child unequivocally supports the relocation. *Id.* at 25-26.

As to subsection 5337(h)(6), Father contends that Mother had only been looking for employment for a few weeks prior to the relocation hearing. *Id.* at 26. According to Father, Mother does not have a concrete plan concerning her education and employment in Georgia, and does not know where she and Child will live after the year they spend at her brother's house. *Id.* at 26-27.

Regarding subsection 5337(h)(7), Father argues that Mother's research regarding schools for Child on schooldigger.com and U.S. News and World Report is insufficient to support the trial court's conclusion that the schools in Georgia "appear to be very good." *Id.* at 27.

In its Rule 1925(a) Opinion, the trial court stated as follows regarding the relocation factors under 23 Pa.C.S.A. § 5337(h):

> **1. The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**

---

[6] We note that Father's arguments concerning these subsections are largely underdeveloped. *See* Pa.R.A.P. 2119(a).

[Child] has always resided with Mother, and Mother has provided the vast majority of his care. Previously[,] Father had been absent for multiple periods of up to six months of [] [C]hild's life[;] however[,] recently[,] Father's contact and relationship have improved. This factor, after further consideration of Mother's motives for the move, greatly favor keeping [] [C]hild with Mother.

**2. The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.**

[Child] is ten years of age and appears to be at an appropriate or even advanced state of emotional and educational development. He has some medical issues, but Mother has adequately cared for them and has made arrangements for the care to continue in Georgia. The [r]elocation will not impair [] [C]hild in any way.

**3. The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the [p]arties.**

Based on the distance (Pennsylvania to Georgia)[,] this factor is of special importance. It should be noted that Father previously held employment that twice took him away from [] [C]hild for extended periods of time. If the [r]elocation [were] granted, [] [C]hild would spend significant time with Father during the summer, and major holidays. The [p]arties would equally share the expense of the visits to return to Blair County to visit Father.

**4. The child's preference, taking into consideration the age and maturity of the child.**

The [c]ourt interviewed [Child] and found him [to be] intelligent, articulate and very aware of his parent's [*sic*] situation. He unequivocally supported the move to Georgia.

**5. Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

- 16 -

The [trial court] finds that recently the [p]arties have cooperated in allowing [Child] to be with the other parent.

**6. Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

The [r]elocation will absolutely allow Mother to enhance her quality of life. In Blair County, Mother had made sincere efforts at gaining employment (six years with [the government official] and opening her own business)[;] however[,] those efforts, apparently through no fault of Mother, have not prospered. The move to Georgia is supported by her family by providing significantly improved housing for Mother and [Child]. Further, Mother has researched additional educational opportunities for herself that will prepare her for better employment. The [trial court] finds the [r]elocation represents a better opportunity for Mother, financially and emotionally, than that of her current situation.

**7. Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

Yes, see Factor #6 above. Additionally, Mother has researched the educational alternative for [Child in Georgia,] and those [Georgia] schools appear to be very good.

**8. The reasons and motivation of each party for seeking or opposing the relocation.**

Mother wants to [r]elocate for better opportunities for herself and [Child]. Father opposes because he doesn't want the distance between himself and [Child]. The [trial court] finds no fault with either [p]arty.

**9. The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

Mother testified, and the [trial court] accepted, that she was emotionally and physically abused by Father in the past[,] which necessitated seeking a [PFA] Order. That PFA was granted after

[a] hearing … and lasted eighteen months[,] until 2015. The [trial court] finds no recent abuse since then.

**10. Any other factor affecting the best interest of the child.**

The [trial court's] basis for allowing the [r]elocation is that none of the §[]5337(h) [f]actors favor[s] Father[,] and several of the [f]actors, as detailed above, greatly favor Mother. The entirety of the [p]arties' custody history is that Mother has provided the great majority of emotional and educational support to [Child].

It would not be in [Child's] best interest to transfer residential custody from Mother to Father. Therefore, the alternatives are reduced to allowing Mother to [r]elocate with [Child,] or to deny [r]elocation altogether, resulting in Mother and [Child] staying in the Blair County, Pennsylvania locale.

There is no doubt the Mother's relocation to Georgia represents a better alternative than remaining in Pennsylvania. Her educational opportunities appear logical and planned. The move is supported by her family, who will provide a vastly improved residential environment for Mother and [Child]. Mother and [Child] will have substantial family support in all aspects of their li[ves] (T.T. 1/7/19, p.p. 22, 23). The [trial court] found Mother's testimony credible on these issues.

While the [r]elocation certainly represents a move that is in the best interests of [Child], it unfortunately represents a potential disadvantage in the relationship between Father and [Child]. The substantially increased distance creates a challenge to preserve the [f]ather and [s]on relationship. Being cognizant of the importance of this, this [c]ourt's Order will provide [for] weekly contact via videoconferencing, as well as extended summer and holiday periods of custody with Father.

Trial Court Opinion, 3/5/19, at 4-8.

Upon review, we conclude that the trial court's findings and conclusions are supported by competent evidence, and we discern no error of law or abuse of discretion by the trial court in granting Mother's Petition for Relocation. **See C.R.F.**, **supra**. Further, we decline Father's invitation to reconsider the weight

to be afforded to Child's preference, as the trial court's determination on this matter is supported by the evidence of record. ***See Ketterer***, 902 A.2d at 540 (stating that "[t]he weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears."); ***see also M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (stating that it is within the trial court's discretion based on the record before it to determine the relevant weight to give each of the factors in a custody action).

Based upon the foregoing, we affirm the trial court's Order granting Mother's Petition for Relocation.

Order affirmed.

Judge Ott joins the memorandum.

Judge Kunselman files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/30/2019

- 19 -